# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BRYAN L. BROYLES, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 05-3445-WEB |
| ) | |
| DAVID R. McKUNE ) | |
| El Dorado Correction Facility ) | |
| & ) | |
| PHIL KLINE ) | |
| Kansas Attorney General, ) | |
| ) | |
| Respondents. ) | |

## MEMORANDUM AND ORDER

Pursuant to 28 U.S.C. § 2254, petitioner Bryan Broyles seeks relief from his Kansas state conviction. Petitioner argues his conviction is unconstitutional because of: ineffective assistance of counsel, prosecutorial misconduct, and cumulative error.

## I. Facts.

On September 1, 1998, Petitioner called 911 to report that his infant son, Hagen, was choking. Prior to the 911 call Hagen had been in Petitioner's sole care. Emergency personnel responded and Hagen was transported to a hospital. On September 3, 1998, Petitioner's infant son, Hagen, died as a result of physical injuries. Medical officials determined the cause of Hagen's death was child abuse.

## II. Procedural History.

On March 22, 2000, Petitioner was convicted by a jury of one count of first degree felony

murder and was sentenced to life imprisonment on May 1, 2000.  Petitioner argued the following on direct appeal: the evidence was insufficient to sustain his conviction; prosecutorial misconduct; erroneous admission of hearsay evidence; erroneous evidentiary decisions; refusal to strike a biased juror and cumulative error.  The Kansas Supreme Court (KSC) rejected these arguments and affirmed Petitioner's convictions.  *State v. Broyles*, 272 Kan. 823, 36 P.3d 259 (2001).

Petitioner next filed a state collateral appeal and argued his conviction should be reversed due to ineffective assistance of counsel.  After an evidentiary hearing, the trial court denied this claim.  The Kansas Court of Appeals (KCA) affirmed that decision and the KSC denied review on September 14, 2004.  *Broyles v. State*, No. 90,533 (Kan. Ct. App. October 1, 2004) (unpublished opinion).

### III.  Standard of Review.

The Court's standard of review is set out in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which "circumscribes a federal habeas court's review of a state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 123 S. Ct. 1166, 155 L. Ed.2d 144, 154 (2003).  Where a state court has adjudicated a claim on the merits, the Court may not grant a writ of habeas corpus unless the adjudication:

> (1) resulted in a decision that was contrary to, or involves an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under § 2254(d)(1), "the only question that matters," is "whether a state court decision is

contrary to, or involved an unreasonable application of, clearly established Federal law." *Lockyer*, 155 L. Ed. 2d at 155. In other words, if § 2254(d)(1) applies, the Court need not conduct a de novo review of the state court decision. *Id.*

Clearly established Federal law means, "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id.* Determining what the Supreme Court has clearly established is usually "straightforward." *Id.* First, a state court's decision is contrary to such law "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694, 122 S. Ct. 1843, 152 L. Ed.2d 914, 926 (2002). Second, the state court's application of clearly established Federal law is unreasonable "if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case." *Id.* The application must be unreasonable, not just incorrect. *Id.* "Avoiding these pitfalls does not require citation of [Supreme Court] cases–indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Patton v. Mullin*, 435 F.3d 788, 794 (10th Cir. 2005) (citing *Early v. Packer,* 537 U.S. 3, 8 (2002)).

Section 2254(e)(1) requires this Court to presume the state court's factual determinations are correct; furthermore, the prisoner bears the burden to rebut the presumption by clear and convincing evidence. § 2254(e)(1). The Court does not stand to correct errors of state law and is bound by a state court's interpretation of its own law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

IV.  Ineffective Assistance of Counsel.

Petitioner argues his counsel was unconstitutionally ineffective because defense counsel failed to present evidence showing the daycare was the source of the victim's injuries. Petitioner argued his counsel should have introduced a Kansas Department of Health and Environment (KDHE) report and testimony from a child showing abuse at the daycare.

The eight year old child, A.S., testified in an *in camera* hearing that she had witnessed the physical abuse of children, including infants, at the daycare where Hagen had stayed. The abuse included the punching and kicking of a child as well as pulling the hair of infants when changing diapers. (R. Vol. I at 291-294). A.S. stated the abuse occurred six times a day every day she was there. (Id. at 284). The KHDE complaint was made by a parent who alleged his child had been slapped by an employee of the daycare. (Tr. of Proceedings at 5); (File #1 at 63).

When asked at the evidentiary hearing why he did not use this evidence, Petitioner's trial counsel stated:

> In my experience I tried to take an approach when trying a jury trial to present what I believe to be a reasonable defense. I think credibility is important with a jury. If you tell a jury something that's unreasonable, then you lose credibility on all your issues. At that point we were faced with a the dilemma, if you will, that instead of having three children who could testify, we had testimony that was going to be admissible by only one child. There was [sic] some problems, I believe, with that child's credibility, number one, because the child described, as I recall, hitting and kicking and pulling hair; that this occurred approximately six times a day every day that she was there and I believe she indicated even on days when she wasn't. She also described some interaction between the staff and infants and I believe she indicated that time there was [sic] six infants in the day-care. My recollection was at the time Hagen Broyles was with the day-care, there were no other infants that were being cared for by the day-care. So I thought we had a problem, number one with regard to the credibility of the child. And number two with regard to the timing of when she was saying what she saw and when she saw it.
> And the third problem that I saw was, again we had a child who had prior injuries that were healing from what everyone agreed. Hagen had only been with the day-care center less than a week. So the injuries that would have been healing could not have been inflicted at the day-care center. I saw a problem with trying to blame one specific person, a day-care worker, fo the abuse that resulted in the child's death, because I just saw that as a credibility problem. What were the chances the child was abused both by someone else and then by the

-4-

      day-care worker?
          I just saw that as a highly unreasonable position to take particularly when we didn't have to – didn't have to name a specific person. I just saw it as a risk to pin that all on the day-care worker. That was kind of all or nothing thing as I saw it.
(Tr. of Proceedings, January 17th 2003 at 22-24).

The child had only been at the day care for a week. (R. Vol. II at 253). The medical evidence showed the child had pre-existing injuries that were at least 7-10 days old. (R. Vol. II at 42-43). Hagen was the only baby for the seven days he was at day care. (R. Vol. II at 240). The three day care employees all stated that they did no harm to Hagen while he was at the day care. (R. Vol. II. at 238, 248, 256).

Using Kansas state law, the KCA found no ineffective assistance of counsel. Kansas law is essentially the same as the familiar *Strickland* standard under Federal law. *Broyles v. State*, No. 90,533 at 5 (citing *State v. Kirby,* 272 Kan. 1170, 1194, 39 P.3d 1 (2002)); *Strickland v. Washington,* 466 U.S. 668 (1984).

To establish a claim of ineffective assistance of counsel, Petitioner must show that his counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced his case. *Strickland*, 466 U.S. at 687-688. To establish prejudice, Petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different. *Id.* at 694. Petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Boyd v. Ward,* 179 F.3d 904, 914 (10th Cir. 1999).

Petitioner fails to show that his counsel's decision not to introduce the child's testimony of abuse was completely unreasonable. Petitioner's strategy at trial was to show the state had not met

its burden of proof. Witnesses testified that they never saw Petitioner harm his child, Petitioner's version of events was consistent, there was no evidence of assault in the house, and medical experts disagreed as to when Hagen's injuries occurred. Credibility was a cornerstone of this defense, especially because the main fact witness for events prior to Hagen's hospitalization was Petitioner himself.

As Petitioner's counsel stated in the evidentiary hearing, there were inconsistencies with the theory that the day care caused the injuries. A.S. made incredible statements regarding the frequency of abuse and the medical evidence showed there to be serious injuries to the victim before his arrival at daycare. It is not unreasonable to believe evidence showing the day care caused the injuries would have created credibility problems and undermined Petitioner's defense.

Petitioner also claims his counsel was ineffective for failing to enter the KDHE report into evidence. The KCA did not find this argument persuasive and neither does this Court. The KDHE report was of minimal value as it contained few details. It did not include the name of the complainant, the employee accused, the child involved or the date of the incident; moreover, the employee denied the incident occurred. It was not completely unreasonable for counsel to omit this evidence as it was of limited value and, as discussed earlier, blaming the day care for the injuries was not consistent with the defense strategy. Petitioner's ineffective assistance of counsel arguments are meritless; consequently, the KCA's denial of his claims was not an unreasonable application of Federal law.

V. Prosecutorial Misconduct.

Petitioner argues the prosecutor's improper conduct violated his right to due process.

Petitioner claims the following violations: the prosecution improperly shifted the burden of proof to the defense; the prosecutor improperly vouched for the credibility of the state's expert witnesses; and the prosecutor called Petitioner a liar.

"The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotations omitted). "In considering whether the prosecutor's remark rendered the trial fundamentally unfair, this court considers the prosecutor's remark in context, considering the strength of the State's case and determining whether the prosecutor's challenged remarks plausibly could have tipped the scales in favor of the prosecution." *Neill v. Gibson*, 278 F.3d 1044, 1061 (10th Cir. 2001).

A.  Burden of Proof and an Inability to Present Witnesses.

In closing arguments, the prosecutor argued the jury should draw adverse opinions from the fact that certain witnesses did not testify for the defense. (R. Vol. IV at 49). The prosecutor stated the following:

> But more importantly who did we not hear from? We did not hear from the people that he actually lived with during that time, did we? We heard from Mandi Brown. But we didn't hear from the Robinson's. We didn't hear from Mandi's sister, who Bryan indicated they had lived with for the six months of his life.

(Id.).

Petitioner first argues this was improper because the prosecution prevented him from having witnesses testify. The record does not support Petitioner's claim.

The defense called over seven witnesses to testify about Petitioner's relationship with his son. (R. Vol. III at 525-568). During the examination of one of the witnesses, the prosecutor

objected on grounds that the witness had seen the victim and Petitioner interact only once; consequently, it was a specific instance of conduct. (Id. at 551). The Court overruled the objection but stated it would permit no more witnesses who had only seen the victim and Petitioner once. (Id. at 552). After this objection, Petitioner called two additional witnesses. Petitioner testified that he and Hagen lived with Tina and Robby Robinson, as well as Mandi's sister for most of Hagen's six month life. (Id. at 566, 572). He also testified that they would have seen Petitioner and the victim together. (Id.).

The KSC denied Petitioner's claim on direct appeal finding there was no support in the record that the court prevented him from calling witnesses with extensive knowledge about his relationship with the victim. *Broyles*, 272 Kan. at 831. The Court agrees. The district court's ruling was limited to those witnesses who had seen the Petitioner and Hagen once. The KSC's determination that the Robinsons and Mandi's sister had extensive knowledge about the Petitioner's relationship with the victim is reasonable given that they lived together for six months. Consequently, neither the prosecutor's objection nor the district court's ruling prevented Petitioner from calling the Robinsons or Mandi's sister. The Court finds the KSC's ruling to be a reasonable determination in light of the facts in the record.

Petitioner next argues his due process rights were violated because the prosecutor referenced his failure to call certain witnesses and this shifted the burden of proof. The KSC found no due process violation. *Id.*

Mentioning a party's failure to call relevant witnesses is permissible during closing arguments. *United States v. Gomez-Olivas*, 897 F.2d 500, 503 (10th Cir. 1990). While these comments "raise an inference that if the witnesses had been called their testimony would have been

harmful or injurious to the accused", they do not shift the burden of proof as suggested by Petitioner. *U.S. v. Dyba,* 554 F.2d 417, 422 (10th Cir. 1977). Indeed, the jury instructions clearly state that the prosecution has the burden of proof and the defendant is not required to prove he is not guilty. (R. File #2 at 116). The Court finds the KSC's decision to be a reasonable application of Federal law as there was no due process violation.

B.  Vouching for credibility of state's expert witnesses.

Petitioner claims it was error for the prosecutor to comment that the motive for Petitioner's expert's testimony was the fee. According to Petitioner, this improperly raised the inference that the state's expert witnesses had no pecuniary motive. Petitioner argues this was improper because there was no evidence the state's witnesses were not also paid; consequently, it assumed facts not in evidence. In closing argument the prosecutor stated:

> So you got to look at and determine based on everything that you heard here who you think is the more credible witness, who do you think is more likely that you should believe.
> ...
> What motives do the other doctors...have to come in and say anything other than that they believe what the cause was. They have no motive to come and tell you something that's untruthful. Let's look at Dr. Arnall. Dr. Arnall testified he had never seen Hagen Broyles. That he had never reviewed - - or he had never reviewed any samples of tissue from Hagen Broyels. And he had never spoke with or contacted anyone to see if they had those samples. In addition, he didn't call and confer with Dr. Handler. He didn't call and talk with Dr. May about what she saw when she did the autopsy. He didn't call and talk with Dr. Pickert or Dr. Melhorn about what they saw in the hospital when they treated Hagen Broyles.
> His testimony is based only on what he found in their records and reports....Now what possible reason would he have to be coming? Well you heard him say he is being paid a thousand dollars a day to come and testify in this case. And let's face it, he just wouldn't be testifying if he agreed with all of other doctors. If he were, he would be testifying for my side.

(R. Vol. IV at 12-13).

The KSC found that such comments were not prosecutorial misconduct. *Broyles*, 272 Kan.

at 832.  "[I]mpermissible vouching occurs only when the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony." *Patton v. Mullin*, 425 F.3d 788, 813 (10th Cir. 2005) (internal quotations omitted).

The prosecutor's comments that the state's experts had no motive to lie did not refer to facts not in evidence. The crux of the prosecutor's credibility argument was the superficial nature of Dr. Arnall's medical examination, which had been elicited in his testimony. See (R. Vol. III at 498-499). The prosecutor mentioned the fee paid to Petitioner's expert to explain why this expert arrived at his conclusion in light of his cursory medical investigation. This implicitly indicated to the jury not that the state's medical witnesses were used without a fee; rather, the state's witnesses were credible because they had either treated Hagen or had performed an autopsy.

Even if the prosecutor's comments improperly suggested the state's experts had testified *gratis*, there would be no grounds for habeas relief. The fact that four of the state's medical experts came to similar conclusions after having examined the victim was strong and credible evidence compared to Petitioner's one expert who had only looked at the files. In this context, the Court cannot say that a reference to a fee adversely affected the jury's ability to judge the evidence fairly. These comments did not deny Petitioner due process and the KSC's decision was not an unreasonable application of Federal law.

C.  References to Petitioner as a liar.

Petitioner next argues that the prosecutor improperly referred to him as a liar during closing

arguments. The record shows the following closing remarks by Petitioner's attorney:

> The third thing that's troubling to me is that Bryan's account of what happened has never varied. It's always been consistent. It's just easier to tell the truth than to lie then you got to remember what the lie is. But Bryan's account has always been consistent...

(R. Vol. V. at 36).

In her rebuttal argument, the prosecutor stated:

> The defendant has told the same story throughout the whole time. Well, again I have to disagree with that. You heard the statements that he made, things that he said, and you heard what he said on the stand today. They talk about where - - where the things were in the room right where Bryan said they were. When he testified today he knew where he sat. He watched that video tape. I want you to think of all the statements you heard about what defendant said. And even something within your more common sense, he is a *consistent liar*. What does he have to make up here? He doesn't have to make anything up. He just left one little small thing out. How difficult is it to say the thing over and over again if you are just leaving out one small 30 second portion of what happened.

(R. Vol. V. at 43-44) (emphasis added).

The KSC found the statement to have been improper but not so flagrant as to require a new trial. *Broyles*, 272 Kan. at 833. "Although labeling a defendant a liar is often unnecessary and unwarranted, referring to testimony as a lie is not *per se* prosecutorial misconduct." *Bland v. Sirmons,* 459 F.3d 999, 1025 (10th Cir. 2006) (internal quotations and citations omitted).

The Court does not find Petitioner's argument persuasive. The prosecutor's comment was made only once, it was made in the context of a broader closing argument which incorporated the medical evidence and the law, and it was made in response to Petitioner's closing argument that consistency equals veracity. See *United States v. Hernandez-Muniz*, 170 F.3d 1007, 1012 (10th Cir. 1999) (prosecutors have considerable latitude to respond to an argument made by opposing counsel); see *Neill,* 278 F.3d at 1061. Moreover, the state's case was strongly corroborated by its four medical expert witnesses; consequently, this one comment was unlikely to have tipped the scales in favor of the state. The prosecutor's comments did not deprive Petitioner of due process or a fair trial. As

a result, the KSC's decision was not an unreasonable application of Federal law

### VI.  Cumulative error.

Petitioner argues the aggregation of errors, while separately harmless, amounts to a deprivation of due process.  The KSC denied this claim.

The Tenth Circuit has held "prejudice may be cumulated among different kinds of error, such as ineffective assistance of counsel and prosecutorial misconduct.  We further conclude that prejudice may be cumulated among such claims when those claims have been rejected individually for failure to satisfy a prejudice component incorporated in the substantive standard governing their constitutional assessment."  *Cargle v. Mullin*, 317 F.3d 1196, 1200 (10th Cir. 2003).  The standard to be used is whether the various errors identified collectively had substantial and injurious effect or influence in determining the jury's sentence.  *Id.* at 1224 (internal quotations omitted).

Similar to the KSC, the Court found one potential error; however, it was found not to be prejudicial.  Petitioner's claim for cumulative error is without merit because there is nothing to aggregate.  *Moore v. Reynolds,* 153 F.3d 1086, 1113 (10th Cir. 1998) (cumulative error analysis does not apply to the cumulative effect of non-errors).  The KSC's denial of this claim was not an unreasonable application of Federal law.

Petitioner's motion for relief under 28 U.S.C. § 2254 (Doc. 1) and Certificate of Appealability under 28 U.S.C. § 2253 are hereby DENIED.

SO ORDERED this 27th day of October, 2006.

                                               s/ Wesley E. Brown
                                               Wesley E. Brown, Senior U.S. District Judge